UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES<br><br>                          v.<br><br>PETER MCCARTHY,<br>STEPS TO SOLUTIONS, INC.<br><br>              Defendants. | No. 21-cv-11300-DLC |

### REVISED ORDER ON DEFENDANT'S MOTION FOR REMITTITUR

CABELL, U.S.M.J.

   I.   INTRODUCTION

   In 2021, the government sued defendant Peter McCarthy under the Fair Housing Act (FHA) on behalf of several women he reportedly sexually harassed when they were residing or seeking to reside at sober living homes associated with Steps to Solutions, Inc., which McCarthy owned and operated.  (D. 1).  In 2024, a jury returned a verdict in the government's favor after a trial and awarded seven witnesses a total of $3,805,000 in damages.  (D. 91).  The defendant subsequently moved for remittitur and the court issued an order granting and denying it in part, but notably reducing the overall damages award from $3,085,000 to $1,420,000.  (D. 95, 145). In so doing, the court altered the individual awards for six of the witnesses: Carrie Ann MacDougall; Jill Lovely; Kelli Yeo; Mindy Mangini; Amanda Manning; and Lauren Masse.  *Id.*

1

The government in turn filed a motion for reconsideration for all the witnesses except for Lauren Masse. (D. 155). The government contended among other things that while the court correctly looked to 42 U.S.C. § 3614, which sets out civil penalties for violations of the Fair Housing Act (FHA), for guidance in assessing the defendant's motion, it did not go on to further consult regulations setting forth updated penalties for violations of several statutes, including the FHA. *See* 28 C.F.R. §§ 85.3(b)(3), 85.5 tbl. 1. The government argued that a consideration of these updated figures would support higher damages awards than those determined by the court.

The court granted the government's motion for reconsideration, in part; the court did not summarily accept the government's proposed penalties but did indicate it would issue a revised order with respect to the five victims at issue. (D. 168). This order effectuates that purpose.

## II.  LEGAL FRAMEWORK

To obtain relief on a motion for reconsideration, "the movant must demonstrate either that newly discovered evidence (not previously available) has come to light or that the rendering court committed a manifest error of law." *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006). "Likewise, a motion for reconsideration should be granted if the court has patently misunderstood a party or has made an error not of reasoning but

2

apprehension." *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 82 (1st Cir. 2008) (cleaned up). Even so, the "district court has substantial discretion and broad authority to grant or deny" a motion for reconsideration. *Id* at 81.

In considering the defendant's motion for remittitur, the court considered several factors in assessing the reasonableness of the various damages awards, including among other factors noting the maximum civil penalties as they appear in the FHA. *See United States v. McCarthy*, 761 F. Supp. 3d 328, 337 (D. Mass. 2024); 42 U.S.C. § 3614(d)(1)(C). The government argued that the court erred to this extent because the current maximum penalties are instead found in regulations stemming from the Civil Monetary Penalties Inflation Adjustment Act of 1990 ("the Adjustment Act"), PL 101-410, October 5, 1990, 104 Stat 890; 28 C.F.R. §§ 85.3(b)(3), 85.5 tbl. 1. As such, the court started down the right path but did not go far enough. Because this omission could materially affect the court's assessment (regarding some but not all damages awards), the court agrees that a reconsideration incorporating this information is warranted.

To begin, courts fashioning a remittitur must comply with the "maximum recovery rule," which permits a reduction to the "highest reasonable total of damages for which there is adequate evidentiary support." *Marchant v. Dayton Tire & Rubber Co.*, 836 F.2d 695 (1st Cir. 1988). At the same time, the Constitution's Due Process

3

Clause imposes a ceiling on the amount of punitive damages that may be imposed. See e.g., *TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 453-454 (1993) ("several of our opinions have stated that the Due Process Clause . . . imposes substantive limits 'beyond which penalties may not go.'") (collecting cases); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 562 (1996).

To that end, the Due Process Clause prohibits "grossly excessive" awards. *Allen v. Rouse*, No. CV 00-10981-RWZ, 2009 WL 10729103, at *6 (D. Mass. July 17, 2009) (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003)). Among the factors a court should consider when determining whether an award is grossly excessive are (1) the degree of reprehensibility of the defendant's conduct, (2) the ratio between punitive damages and compensatory damages, and (3) the civil or criminal penalties that could be imposed for comparable misconduct. *Gore*, 517 U.S. at 574-575. These same principles (the "*Gore* factors") apply to courts weighing and determining remittitur. *See Mendez-Matos v. Municipality of Guaynabo*, 557 F.3d 36, 56 (1st Cir. 2009) (using the *Gore* factors to determine a remitted amount); *Sony BMG Music Ent. v. Tenenbaum*, 719 F.3d 67, 70 (1st Cir. 2013) ("*Gore* and its progeny . . . address the . . . issue of when a jury's award of *punitive* damages is so excessive that it violates due process." (emphasis in original)).

4

In its original order on remittitur, the court identified the maximum civil penalties listed under the FHA as $50,000 for a first violation and $100,000 for subsequent violations. 42 U.S.C. § 3614(d)(1)(C); see *McCarthy*, 761 F. Supp. 3d at 337. As the government points out, however, Congress amended the maximum civil penalties available for FHA violations pursuant to the Adjustment Act. *See* Pub. L. No. 101-410, 104 Stat. 890; 28 C.F.R. §§ 85.3, 85.5. Per the regulations promulgated thereunder, the maximum FHA civil penalty amounts depend on when the statutory violations occurred. For all violations relevant to this case occurring on or before November 2, 2015, the adjusted civil monetary penalties are set out in 28 C.F.R. § 85.3; for all violations occurring after November 2, 2015, the adjusted penalties are set out in 28 C.F.R. § 85.5.

These two regulations each make additional distinctions that bear on the exact amount of maximum monetary penalties for a given FHA violation. Pursuant to § 85.3, the maximum civil penalty under the FHA for a first violation occurring before April 28, 2014 is $55,000. 28 C.F.R. § 85.3(b)(3)(i). For a first violation occurring between April 28, 2014, and November 2, 2015, the maximum civil penalty is $75,000. *Id.* For subsequent violations occurring before April 28, 2014, the maximum civil penalty is $110,000; and for subsequent violations occurring thereafter, until November 2,

2015, that amount is adjusted to $150,000.   28 C.F.R. § 85.3(b)(3)(ii).

Section 85.5 provides the maximum civil penalty amounts for all violations occurring after November 2, 2015. Although the regulation further organizes those penalties according to the date of assessment, only one such category bears on this case: amounts listed for civil penalties assessed after February 12, 2024, but before July 4, 2025.  The maximum penalty for a first violation is $127,983 and the maximum penalty for subsequent violations is $255,964.  28 C.F.R. § 85.5 tbl. 1.

Again, insofar as the court relied (in part) on statutory maximums in reaching a given remittitur determination, it should have referenced these amounts rather than those set forth in 42 U.S.C. § 3614(d)(1)(C).

**III. APPLICATION**

1.   Carrie Ann MacDougall

The jury originally awarded Carrie Ann MacDougall $105,000 in compensatory damages and $525,000 in punitive damages, based on events that took place in 2018 and 2019.  The court subsequently reduced Ms. MacDougall's punitive damages award from $525,000 to $105,000.  The government argues the court should instead award Ms. MacDougall $268,762 in punitive damages.  The court declines to do so.

Although the court acknowledges that it erred generally to the extent it relied in part on an outdated statutory civil penalty in calculating certain damages awards, it did not make that error as it relates to Ms. MacDougall. That is, the statutory maximums were not a significant factor in the court's determination to adjust Ms. MacDougall's punitive damages award from $525,000 to $105,000. Rather, the court focused on the reprehensibility of the defendant's conduct and the ratio of the compensatory damages to punitive damages, finding that those considerations warranted the reduction the court imposed. The government moreover does not really explain how it gets to its suggested recalculation of $268,762. Considering the years of the violations in question (2018 and 2019), § 85.5 provides for statutory maximums of $127,983 for a first violation and $255,964 for subsequent violations, neither of which would seem to align with the government's proposed award.

As such, the government has not shown a manifest error of law or misapprehension on the court's part warranting reconsideration of Ms. MacDougall's punitive damages.

2. Jill Lovely

The jury originally awarded Jill Lovely $115,000 in compensatory damages and $125,000 in punitive damages based on events taking place in 2021. The court adjusted Ms. Lovely's punitive damages award from $125,000 to $60,000. The government

7

argues that the court should return the figure to $125,000. The court agrees and will do so.

As part of its reasoning for remitting Ms. Lovely's punitive damages award from $125,000 to $60,000, the court stated that "an award of $60,000 is more in line with the amount of damages that would be imposed for a violation of the statute." *McCarthy*, 761 F. Supp. 3d at 338. As the government correctly notes, the "statute" the court was referring to was limited to 42 U.S.C. § 3614(d)(1)(C) and did not include a consideration of § 85.5, which would call for an award of up to $127,983. The court thus erred when it found that the remitted amount was "more in line with the amount of damages that would be imposed for a violation of the statute." Accordingly, the court will revise Ms. Lovely's punitive damages award to $125,000.

3. Kelli Yeo

The jury originally awarded Kelli Yeo $150,000 in compensatory damages and $325,000 in punitive damages based on events that occurred between 2011 and 2014. The court adjusted Ms. Yeo's punitive damages award from $325,000 to $50,000. The government argues that the court should recalculate the punitive damages to be $127,983. The court agrees and will do so.

In its order remitting Ms. Yeo's award for punitive damages, the court, similar to its analysis with respect to Ms. Lovely, observed that the remitted amount of $50,000 "aligns with what the

8

statute would provide for if damages were imposed thereunder." *McCarthy*, 761 F. Supp. 3d at 340-41. Here again, the court erred in referring to the outdated statutory maximum of $50,000 rather than the updated $127,983 figure. The court thus adjusts the remitted amount of Ms. Yeo's punitive damages award to $127,983.

    4.   <u>Mindy Mangini</u>

The jury originally awarded Mindy Mangini $300,000 in compensatory damages and $875,000 in punitive damages, based on violations that occurred in 2009 and 2013. The court reduced Ms. Mangini's $875,00 punitive damages award to $300,000. The government argues the court should recalculate the punitive damages to be $767,894. The court will slightly adjust the award upward to $330,000.

To explain, the court noted that it viewed "the statutory damages scheme as instructive" in reference to the outdated FHA civil penalties of $50,000 for a first violation and $100,000 for a subsequent violation. *McCarthy*, 761 F. Supp. 3d 328, 339 (D. Mass. 2024). But going on, the court reasoned that in light of the reprehensibility of the defendant's conduct, and considering there was both a first and subsequent violation in Ms. Mangini's case, "an award double that amount, and equal to the amount of compensatory damages, is justified," meaning $300,000. *Id.*

In arguing that the court should now impose punitive damages of $767,894, the government seeks to have the court apply its

9

double-fine reasoning to the updated civil penalties provision. That is, it argues the court should, according to § 85.5, impose penalties of $127,983 and $255,964 for multiple violations, and then double the sum to get to $767,894.

The problem with this approach, though, is that § 85.5 does not apply to Ms. Mangini. Section 85.5 applies to violations that occurred after November 2, 2015, and the violations in Ms. Mangini's case took place in 2009 and 2013. As such, her situation falls within the purview of § 85.3, which applies to "*all* violations occurring on or before November 2, 2015." 28 C.F.R. § 85.3 (emphasis added).[1] According to § 85.3, the civil penalties for violations in 2009 and 2013 are $55,000 for a first violation and $110,000 for a subsequent violation. Applying these updated figures to the court's reasoning on remittitur, which is to say adding them together and then doubling the sum, yields the resulting sum of $330,000. The court thus adjusts the remitted amount of Ms. Mangini's punitive damages award to $330,000.

---

[1] The government seems to implicitly argue that because the penalty here was not "assessed" until 2024, the figures in § 85.5 would apply to the violations in Ms. Mangini's case. This is contrary to the plain language of the two regulations. Section 85.5 contains no language suggesting it may apply to violations before November 2, 2015; indeed, the title of the regulation is "Adjustments to penalties for violations occurring after November 2, 2015." Meanwhile, § 85.3 specifically states that it applies to "all violations occurring on or before November 2, 2015, and for assessments made before August 1, 2016, for violations occurring after November 2, 2015." Nothing in this language qualifies the proposition that § 85.3 applies to "all violations occurring on or before November 2, 2015."

10

5.  Amanda Manning

The jury originally awarded Amanda Manning $300,000 in compensatory damages and $875,000 in punitive damages based on events that occurred sometime between 2012 and 2017. The court reduced Ms. Manning's compensatory damages from $300,000 to $50,000, and her punitive damages from $875,000 to $100,000. The government argues that the court should reinstate the jury's award for compensatory damages and recalculate the punitive damages to $767,894 -- the same amount the government argues should be awarded Ms. Mangini -- or to otherwise reconsider its remittitur for Ms. Manning's compensatory and punitive damages in light of the errors the government has cited.

The court declines to make any adjustments to its order relating to Ms. Manning. Unlike with other witnesses, the government does not attempt to argue that the court erred by failing to consider the updated civil penalty figures. Rather, it takes issue with the reasoning the court followed in reducing Ms. Manning's compensatory and punitive damages. Regarding compensatory damages, the court considered the relative brevity of the improper conduct but the government argues it ought instead to have focused more on the nature of the harm, however brief.

With respect to punitive damages, the court considered the *Gore* factors in reaching its determination, but the government contends it misapplied the *Gore* factor focusing on the

11

reprehensibility of the defendant's conduct. Citing to Supreme Court precedent, it argues that the court also should have taken more care to consider whether the harm was physical rather than economic, and whether the conduct evinced an indifference to or a reckless disregard of the health or safety of others. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 409 (2003) ("To determine a defendant's reprehensibility—the most important indicium of a punitive damages award's reasonableness—a court must consider whether: the harm was physical rather than economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the conduct involved repeated actions or was an isolated incident; and the harm resulted from intentional malice, trickery, or deceit, or mere accident."). In this regard, the government argues that the court was incorrect when it found that no physical contact occurred between the defendant and Ms. Manning, citing testimony that McCarthy stroked Ms. Manning's neck. (D. 155 at 10 n.2). The court stands corrected on this last point but does not find that the government's arguments warrant reconsideration.

As the government itself argues, physical contact is but one aspect of reprehensibility, and reprehensibility is but one factor for the court to consider on remittitur. Further, the remainder of the government's argument relates to disagreements with the court's legal reasoning, i.e., it's contention that the court ought

12

to have emphasized certain factors from *State Farm* over others. The court acknowledges the government's argument but its disagreement with the court's approach does not merit reconsideration in the court's view.  A movant seeking reconsideration is entitled to relief when the court has made a genuine error of apprehension, not of reasoning. *See Ruiz Rivera*, 521 F.3d at 82 (quoting *Sandoval Diaz v. Sandoval Orozco*, No. CIV. 01-1022JAGGAG, 2005 WL 1501672, at *2 (D.P.R. June 24, 2005)) ("a motion for reconsideration should be granted if the court 'has patently misunderstood a party ... or has made an error not of reasoning but apprehension.'").  Even assuming the government's proposed approach (and corresponding proposed damages) are defensible, reconsideration is "an extraordinary remedy which should be used sparingly" and it is thus "not a promising vehicle for revisiting a party's case and rearguing theories previously advanced and rejected."  *Palmer*, 465 F.3d at 30; *see also Biltcliffe v. CitiMortgage, Inc.*, 952 F. Supp. 2d 371, 384 (D. Mass. 2013), aff'd, 772 F.3d 925 (1st Cir. 2014) ("Because reconsideration is not the time to repeat old arguments previously considered and rejected, the Court need not rule on them again.") (citations omitted).

Consequently, Ms. Manning's remitted awards remain at $50,000 in compensatory damages and $100,000 in punitive damages.

13

## IV. CONCLUSION

For the foregoing reasons, the court revises its prior order of remittitur. Now, and including all victim/witnesses whose damages were initially addressed in considering the defendant's motion for remittitur, the court remits the respective damages awards as follows: (1) Carrie Ann MacDougall's compensatory and punitive damages each remain at $105,000, for a total award of $210,000; (2) Jill Lovely's compensatory damages remain at $115,000 and her punitive damages are adjusted to $125,000, for a total award of $240,000; (3) Kelli Yeo's compensatory damages remain at $150,000 and her punitive damages are adjusted to $127,983, for a total award of $277,983; (4) Mindy Mangini's compensatory damages remain at $300,000 and her punitive damages are adjusted to $330,000, for a total award of $630,000; (5) Amanda Manning's compensatory damages remain at $50,000 and her punitive damages remain at $100,000, for total award of $150,000; (6) Lauren Masse's compensatory damages remain at $50,000, for total award of $50,000; and (7) Michael Fromer's compensatory damages remain at $10,000, and his punitive damages remain at $25,000, for total award of $35,000. The government shall inform the court by January 12, 2026, whether it will accept the remittitur or seek a new trial on the issue of damages.

***So Ordered.***                                              /s/ Donald L. Cabell
                                                               DONALD L. CABELL, U.S.M.J.
DATED:  January 2, 2026